United States District Court
Northern District of California

UNITED STATES OF AMERICA,

    Plaintiff,

v.

REAL PROPERTY LOCATED AT 1920 APPLE DRIVE, CONCORD, CALIFORNIA (APN 147-094-009),

    Defendants.

Case No.: 12-00159-PJH (KAW)

REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE

In this *in rem* forfeiture action, Plaintiff United States moves for default judgment against Defendant Real Property located at 1920 Apple Drive, Concord, California (APN 147-094-009)("Defendant Property"), pursuant to 18 U.S.C. § 981(a)(1)(C). The Government's motion follows an entry of default by the clerk on May 16, 2012. To date, no formal claims or answers have been filed in this action.

At the December 20, 2012 hearing, the Government acknowledged that it did not attempt to serve direct notice on one known, potential claimant, thereby failing to comply with the procedural requirements for civil forfeiture. For the reasons set forth below, the Court recommends that the Government's motion be denied without prejudice.

## I. BACKGROUND AND PROCEDURAL HISTORY

Defendant Property is located at 1920 Apple Drive, Concord, California. On or about June 24, 2002, Alexandre Machado Pinheiro (a/k/a Alexandre Machado) ("Pinheiro") purchased Defendant Property for approximately $278,000. (Compl., Dkt. No. 1., ¶ 8.) In October 2007, Pinheiro refinanced, and obtained a new mortgage loan in the amount of $408,000 from Wachovia, which was secured by Defendant Property. (*Id.*) Subsequently, Pinheiro stopped

making mortgage payments, and in June 2009, Wachovia initiated foreclosure proceedings claiming that Pinheiro was $21,643.54 behind in his mortgage payments. (*Id.* at ¶ 9).

To avoid foreclosure, Pinheiro conspired with others to maintain control and ownership of Defendant Property by way of a short sale to Heuler Moura, a business associate. (*Id.*) The FBI investigation established that Moura and Pinheiro are both "Members" of Homevestor, LLC, registered in Georgia. (*Id.* at ¶ 15.) Moura was a signatory on Homevestor's Bank of America account opened in Marietta, Georgia, from which Pinheiro was authorized to withdraw Homevestor funds. (*Id.* at ¶¶ 15-16.) Despite this association, neither Pinherio nor Moura disclosed that they had a business relationship and that this would not be an arm's length transaction. (*Id.* at ¶ 9.)

On October 21, 2009, Moura made an offer to purchase Defendant Property for $160,000. (*Id.* at ¶ 10.) Wachovia agreed to the sales amount on the condition that "[a]ny relationships between the Seller, Buyer, Agents, and/or Escrow/Title Companies must be disclosed in writing...." (*Id.*)

On October 26, 2009, First American Title Company, acting as escrow agent for Defendant Property, deposited three cashier's checks, totaling $190,000, into the escrow account established for the purchase of Defendant Property. (*Id.* at ¶ 11.) Two of those cashier's checks were purchased by Homevestor, LLC. (*Id.*) The third cashier's check was purchased by Elvecio Machado, Pinheiro's brother, in the amount of $50,000. (*Id.*) On October 28, 2009, Moura closed escrow on Defendant Property. (*Id.* at ¶ 12.) The fraudulent short sale resulted in a $284,068.79 monetary loss to Wachovia, which was the amount of debt shed through the short sale. (Weber Dec., Dkt. No. 29, ¶2.)

On December 18, 2009, seven weeks after purchase, Moura quit clamed Defendant Property to Alexandre Machacho (Pinheiro's alias) as Trustee for Brusa Land Trust, located at 1920 Apple Drive. (Compl., ¶ 12.)

On January 19, 2011, Pinheiro pled guilty to conspiring to defraud a FDIC-insured institution based on a short sale of property owned by his brother, Elvecio Machado, located at 1268 Alcatraz Avenue, Berkeley, California. (*Id.* at ¶ 18). Pinheiro admitted to posing as an

individual, "Joao J.," who purchased 1268 Alcatraz, as well as preparing tax returns in "Joao J.'s" name to show sufficient income to qualify for a mortgage. (*Id.*) Pinheiro was convicted and sentenced on July 18, 2011 to 12 months imprisonment. (*Id.*) After pleading guilty, but before sentencing, Pinheiro quit claimed Defendant Property back to Moura, presumably to avoid forfeiture of the property in connection with his criminal conviction. (Compl., ¶ 20; Mot. for Default J. at 3.)

On January 10, 2012, the Government filed this action to obtain the forfeiture of the Defendant Property as proceeds of bank fraud and the conspiracy to commit bank fraud, pursuant to 18 U.S.C. § 981(a)(1)(C). (Mot. for Default J., at 2.) Following the filing of the complaint, the Government posted notice on Defendant Property (Dkt. No. 5), and sent notice to Pinheiro, Heuler Moura, and Valvidino Moura via U.S. Mail. (*See* Proofs of Service, Dkt. Nos. 6 and 8.) The Government did not send notice to Elvecio Machado. The Government also posted notice of the forfeiture online for at least 30 consecutive days. (Proof of Publication, Dkt. No. 13.)

On May 14, 2012, the Government filed a request for entry of default against Defendant Property, which was served on Pinheiro, Heuler Moura, and Valvidino Moura. (*See* Proof of Service, Dkt. No. 16). The Clerk entered the default against Defendant Property on May 16, 2012. (Clerk's Notice Entry of Default, Dkt. No. 18.) The Government immediately filed its motion for default judgment seeking forfeiture of Defendant Property. (Dkt. No. 19.)

On May 17, 2012, the matter was referred to the undersigned magistrate judge for report and recommendation on the Government's motion.

On June 22, 2012, the Government filed a written response from Pinheiro (*pro se*), wherein he challenged the legality of the civil forfeiture proceedings. (Dkt. No. 23.) As a result, the presiding judge took the Government's motion off calendar, and provided Pinheiro with a 30-day extension to file a verified claim and answer to the complaint. (*See* Notice of Filing of Document Received from Alexandre Pinheiro, Dkt. No. 25.) Pinheiro did not file a claim nor answer within the time prescribed, and the Government renewed its motion on November 13, 2012 (Dkt. No. 29.), again moving for default judgment and seeking forfeiture of Defendant Property.

## II. DEFAULT JUDGMENT

### A. Legal Standard

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Id.* at 999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds that these elements are not satisfied, default judgment should not be entered, because the judgment would be void. *Id.* at 712.

### B. Subject Matter Jurisdiction and Personal Jurisdiction

As the Government's complaint seeks forfeiture of Defendant Property pursuant to 18 U.S.C. § 981(a)(1)(C), this court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. §§ 1345, 1355.

Venue is proper in the Northern District of California under 28 U.S.C. §§ 1355(b), 1395, as Defendant Property, located at 1920 Apple Drive, Concord, CA, is located within the Northern District.

The Court has personal jurisdiction over Defendant Property, because notice was posted after this action *in rem* was filed in accordance with 18 U.S.C. § 985(c)(3).

### C. Failure to Comply with Civil Forfeiture Notice Requirements is Fatal

Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1344 (bank fraud) or conspiracy to commit bank fraud may be subject to civil forfeiture. (*See* 18 U.S.C. § 981(a)(1)(C).) Real property subject to forfeiture to the United States may be seized in the manner set forth in 18 U.S.C. § 985, such that the Government shall initiate civil forfeiture proceedings by filing a complaint for forfeiture, posting a notice of the complaint on the property, and serving notice on the property owner, along with a copy of the complaint.

Specifically, the Government's complaint must be verified, state the grounds for jurisdiction and venue, describe the property being forfeited with reasonable particularity, identify the statute under which the forfeiture action is brought, and include sufficient factual detail to support a reasonable belief that the Government will be able to meet its burden of proof at trial. (Fed. R. Civ. P. Supp Admir. Mar. Cl. G(2)(a)–(f).) Here, the Government properly filed a verified complaint for forfeiture and posted notice on the property in accordance with § 985(c)(1)(B). The complaint set forth sufficient facts as to the grounds for jurisdiction and venue, a description of the property being forfeited (including the parcel number), and the federal statutes under which the forfeiture action was brought (Compl., ¶¶ 1-26). Finally, the facts alleged support a reasonable belief that the Government will meet its burden of proof at trial.

The Admiralty Local Rules of this district govern *in rem* forfeiture actions. *(See* Admir. L.R. 1-2.) Under Admir. L.R. 6-1, a party seeking default judgment must show that due notice of the action and arrest of the property has been given. Since this forfeiture action arises from a federal statute, the notice and arrest requirements must be in accordance with Supplemental Rule G(3)-(4) of the Federal Rules of Civil Procedure Admiralty, Maritime Claims. (*See* Admir. L.R. 6-1(a).)

As to the "arrest," if the defendant is real property, the Government must proceed under 18 U.S.C. § 985. (Supp G(3).) Pursuant to 18 U.S.C. § 985(c)(3), an arrest warrant *in rem* is not required for the court to exercise jurisdiction, because the notice was posted on Defendant Property by affixing the notice to the front door of both units on the property in accordance with subsection (c)(1)(B). (*See* Mot. for Default J., Ex. A., FBI Transcription dated 1/10/2012.)

With respect to providing procedurally sufficient notice to potential claimants, Rule G(4) requires the Government to provide both general notice to the public and direct notice of the forfeiture action to any known person who reasonably appears to be a potential claimant, so that the person has an opportunity to file a timely claim and defend the forfeiture action as a party to the litigation. (Supp G(4).) The public notice requirement may be met by publishing the notice on an official government forfeiture website for at least thirty consecutive days. (Supp

G(4)(a)(iv)(C), (4)(b)(i).) That notice must state the time to file a claim and answer. (Supp G(4)(a)(ii)(B).)

In complying with Rule G's notice contents requirement to both the public and potential claimants, the Government's notice contained a description of Defendant Property and the applicable deadlines to submit verified claims — specifically, any person or entity having an interest in Defendant Property was required to file a verified claim or statement no later than 35 days after service of the complaint or within sixty days of the first date of publication of notice. (*See* Notice of Forfeiture Action, Dkt. No. 3.; Am. Certificate of Service, Dkt. No. 6.) The published notice was posted online for the requisite thirty, consecutive days.

In addition, Rule G(4)(b)(ii)(C) requires that "[n]otice sent to a potential claimant who is incarcerated must be sent to the place of incarceration." On January 11, 2012, the Government sent the notice of forfeiture to Pinheiro at his address at Federal Corrections Institution Lompoc, along with copies of the complaint and notice documents. (Am. Certificate of Service, Dkt. No. 6.)

Under Rule G(4)(b)(iii)(E), notice may be sent to the last known address of a potential claimant. The Government sent notice to Hueler Moura, the current title holder, at three different, known addresses, including his last known address. (*Id.*) This is sufficient, even if he never actually received notice, because it was sent to his last known address.

The Government, however, failed to serve direct notice on Elvecio Machado, despite him being known to the Government as having a potential interest in the property based on his contribution of $50,000 to the escrow account. (Compl., ¶ 11.) It is well established that a "fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Rule G goes further, requiring the Government to send notice to "any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)." (Supp G(4(b)(i).) The Government knew that Elvecio Machado may have an

economic interest on the property based on the facts in its Complaint, so to enter default judgment without providing Elvecio Machado an opportunity to file a formal claim and be afforded the opportunity to become a party and defend his interest in the property would violate his due process rights. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)("individuals must receive notice and an opportunity to be heard before the Government deprives them of property.") As a result, the Government's failure to serve direct written notice on a known potential claimant is fatal at the present time.

At the December 20, 2012 hearing, the Government acknowledged that it had not served Elvecio Machado despite having knowledge that he was a potential claimant. The Government agreed to send notice to Elvecio Machado, and he will have 35 days from the date of service to file a claim and become a party. The Government asserted that this notice would most likely be effected through the attorney representing him in a related matter, a valid form of direct notice under Rule G(4)(b)(iii)(B). Should Elvecio Machado not avail himself of the claims process within 35 days of the notice, the Government may again seek default.

Admir. L.R. 6-2 sets forth the requirements to obtain a default judgment against an *in rem* defendant over which the Court has jurisdiction. Accordingly, a party seeking a default judgment must make the following two showings: (1) notice of the action and arrest of property has been given as required by Admiralty Local Rule 6-1(a)(1) and (b)(1), as outlined above, and (2) no one has filed timely and responsive pleadings pursuant to Rule G(5). Admir. L.R. 6-2(a). As detailed above, direct notice was not given to all reasonably known potential claimants, so the entry of default judgment is not appropriate under the Admiralty Local Rules.

### III. CONCLUSION

Due to the Government's failure to serve direct notice on all known potential claimants—namely Elvecio Machado—this Court recommends that the Government's motion for default judgment be DENIED WITHOUT PREJUDICE. Should the Government serve Elvecio Machado and he fails to file a formal claim and answer within the statutory claims period, the Government may again seek default.

1    Any party may file objections to this report and recommendation with the District Judge
2 within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(a); N.D.
3 Civil L.R. 72-2.  The parties are advised that failure to file objections within the specified time
4 may waive the right to appeal the District Court's order. *IBEW Local 595 Trust Funds v. ACS*
5 *Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).
6    IT IS SO RECOMMENDED.

8 Dated: December 21, 2012

KANDIS A. WESTMORE
United States Magistrate Judge